

UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF NEW YORK _ _ _ _ _ _ _ _ _ _ _ _ _ _X

MICHAEL NIEVES

V.

                                        Plaintiff,

Honorable Judge, Curtis J. Farber; Cyrus R. Vance, Jr.,
District Attorney; Assistant District Attorney, Brandon
Riddle, Fire Marshal, Philip Meager, Shield #: 38; Police
Officer, James Marcinek, Shield #: 20371 & Police Officer,
Rufian Arshad, Shield #: 20210, 30th Precinct; all acting
Under color of the City of New York, the State of New
York, and under the United States Federal Government

                                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**1983 COMPLAINT;
JURY TRIAL REQUESTED**

**CIVIL ACTION NO.:_____**

# 20  CV  0990

I, Michael Nieves, being duly sworn according to the law, depose and say that I am the Plaintiff in the above entitled proceeding. All of the forgoing information I have submitted below (in support of my request, Plaintiff's case, etc.), is true and correct.

I, Michael Nieves, pro se, for this complaint state as follows:

**1**. Michael Nieves is currently being confined at Mid-Hudson Forensic Psychiatric Center, 2834 Route 17-M New Hampton, New York 10958, since April 10, 2019.

**2**. Michael Nieves is, and was at all times mentioned herein, an adult citizen of the United States and is a resident of the State of New York.

**3**. Defendants was at all relevant times herein acting under color of the City of New York, the State of New York, and the United States Federal Government

**4**. Defendants was at all relevant times herein, the City of New York, the State of New York, and the United States Federal Government.

5. This action arises under and is brought pursuant to 42 U.S.C. Section 1983 to remedy the Deprivation under state law of rights guaranteed by the United States Constitution. This court has jurisdiction over this action.

6. Plaintiff's claims for injunctive relief are authorized by Rule 65 of the Federal Rules of Civil Procedure.

7. Plaintiff has filed no other lawsuits dealing with the same facts involved in this action or otherwise relating to his imprisonment.

8. At all relevant times herein, defendants were "persons" for purposes of 42 U.S.C. Section 1983 and acted under color of law to deprive plaintiff of his constitutional rights, as set forth more fully below.

## STATEMENT OF FACTS

1. Plaintiff has been unlawfully detained by the government since April 9, 2019 until the present.

2. Plaintiff was charged with Burglary in the First Degree, Arson in the Second Degree, Reckless Endangerment in the First Degree, and Unlawful Imprisonment in the First Degree.

3. As reflected by the copy of the (People's Voluntary Disclosure Form) filed by the Assistant District Attorney, Brandon Riddle, against the Plaintiff, an initial arrest for these charges occurred on March 6, 2019, whereby pursuant to current "Emotional Disturbed Person Case Laws" under Mental Hygiene Law Statute 9.27 and Statue 9.37, Plaintiff was submitted to a civil proceeding at Harlem Hospital under New York State Civil Law, Article 3, Subsection 23 – Privilege from arrest. **See: Exhibit (A).**

4. On or about April 9, 2019, Plaintiff was released from Harlem hospital to a Transitional Residential Service program – "Road To Success" of Kingsboro Psychiatric Center with adjusted medications, an Assisted Outpatient Treatment (AOT) Court Order, and with an Visiting Nurse Service, Assertive

Community Treatment Care Coordinator, Stephanie Shelton. Harlem Hospital records reflect that the Plaintiff was "not a prison." **See: Exhibit (B).**

5. On or about April 9, 2019 at approximately 6:00 A.M., Fire Marshall, Philip Meagher, Shield #: 32, executed an unlawful, warrantless arrest under an I-Card, without probable cause based upon the application of a "defective accusatory instrument" and an falsified "Felony Complaint," dated April 9, 2019, at approximately 6:30 P.M., in violation of CPL Statute 180.80. See: People ex rel. Vancour v. Scoralick, Supra: People ex rel. Arshack v. Koehler, supra; People ex rel.  Gilbert v. Scoralick, Supra at 534; People v. Edwards, 121. Misc. 2d 505, 506; Ballacose, Practice Commentary, Mckinney's Con. Laws of NY, Book 11A, CPL 180.80 at 175 – 176. See also: People ex rel. Arshack on Behalf of Ellis v. Koehler, 151 A.D. 2d 309, 542 NYS 2d 578 (1st Dep't 1989).

6. The Felony Complaint and accusatory instrument's facts did not support each evidentiary element of the offenses charged. Therefore, the indictment must be dismissed. See: People v. Alajandro and People v. Weinberg. **See Exhibit (C ).**

7. The defendant was recordedly denied his U.S. Constitutional and New York State Statutory rights to a Preliminary Hearing, pursuant to People v. Hodge. Section 180.10(2) of the New York Criminal Procedure Law provides that a defendant who has been arraigned on a Felony Complaint in a local criminal court has the right to a prompt hearing to determine whether there is "sufficient evidence" to warrant the court in holding him for the action of a grand jury.

8. Mandamus seeks to compel the performance of a ministral duty imposed by a constitution or a statue. It is authorized by New York Civil Practice Law and Rules Statute 7801-7806 (Mckinney 1981 & Supp. 1982-82).  For a general discussion of the availability of Mandamus in New York, see 23 Carmody, Walt 2d Statute 145.78-106 (1968 & Supp. 1981); Blue v. United States 342 F. 2d 894, 900 (D.C. cir.), cert. denied, 380 U.S. 944 (1965); Fries v. Morganthau 86 Misc. 2d 852, 383 NYS 2d 784 (Supp. Ct. NY County 1975).

9. Plaintiff states and asserts that gross defects in this case were evident to any NYS Bar licensed attorney to which a preliminary hearing could have challenged to have the case dismissed prior to a grand jury proceeding. See: Blue v. United States, 342, F. 2d 894 (D.C. cir.) cert. denied, 380 U.S. 944

(1965), where the court stated "unless some reason is shown why counsel could not have discovered and challenged the defects before trial, it will generally be assumed that any objections to the preliminary proceedings were considered and waived, and no post-conviction remedies were available." I.D. at 900-01.

**10.** Plaintiff herein further states and asserts the gross violations of U.S. Constitutional and New York State Statutory Due Process rights by citing People v. Hodge's proceeding wherein "The district Attorney chooses the method of commencing the felony prosecution, either by filing a felony complaint in a local criminal court or by filing a grand jury indictment in a superior court. See: People v. Abbaiello, 30 A.D. 2d 11, 12, 289 NYS 2d NYS 2d 287, (1st Dep't 1968); See also: People ex rel Hirschberg v. Close, 1 NY 2d 258, 134 NE NE 2d 838, 152 NYS 2d 1 (1956); cf. Gerstein v. Pugh, 420 U.S. 103, 119 (1975); ("nor do we retreat from the established rule that illegal...detention does not void a subsequent conviction).

**11.** Moreover, Due Process violation pursuant to People v. Hodge's proceeding wherein "after the felony complaint has been held thereon, the District Attorney has the additional option of either conducting the hearing under  CPL section 180.10(2) or presenting the case directly to the court under section 190.55 (2) (a)." See: Id. Statute 190.55 (2) (a),(Mckinney Supp. 1981). "A grand jury indictment supersedes and displaces local criminal court proceedings, including preliminary hearing." See; supra cases cited in notes 12, 26; and see also: People v. Mcdonnell, 83 Misc. 2d 907, 373, NYS 2d 971 (Supp. Ct. Queens County 1975); People v. Belmonth, 48 Misc. 2d 1057, 266 NYS 2d 752 (Sup. Ct. Queens County 1966).

**12.** "Thus, a defendant's/plaintiff's statutory right to a preliminary hearing is not absolute; it is conditioned on the District Attorney's decision not to present the case directly to a grand  jury." See: M. WAXNER, 1 New York Criminal Practice 7.3(2), (1977).

**13.** Wherefore, Plaintiff affirms on absolute Due Process violation pursuant to People v. Hodge that should be redress by the U.S. Federal District Court as timely and judicial as possible. See: Gerstein v. Pugh, 420 U.S. 103 (1975), the Supreme Court  held that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extend restraint of liberty following arrest." Id. At 115. "The court further stated, however, that a judicial hearing is not prerequisite to prosecution by information." Id.  at 119. "Thus, the probable cause determination is not a constitutional prerequisite to

the charging decision, but is required only for those suspects who suffer a significant restraint on liberty." See: Id. at 127, n. 26; See also People v. Shing, 83 Misc. 2d 462, 371, NYS 2d 322 (crim. Ct. NY County 1975).

14. Plaintiff also states and affirms that pursuant to CPL 170.20(1) and pursuant to CPL 140.20(1) and to the New York State Constitution, Article 1, 12 ("unreasonable seizure") and 6 ("due process"), gross violations of laws occurred by the fact of the defendant's initial arrest, dated March 6, 2019 in which an arraignment did not occur until April 9, 2019, based upon a defective and malicious accusatory instrument or felony complaint.

15. CPL 140.20(1) requires that "upon arresting a person without a warrant, a police officer, after performing without delay all recordings, finger printing and other preliminary police duties required in the particular case, must without unnecessary delay bring the arrested person or cause him to be brought before a local criminal court and file therewith an appropriate accusatory instrument charging him with the offense or offenses in question." (Emphasis added).

16. However, "the Legislature did not set rigid temporal limits in enacting CPL 140.20(1); nor do we in construing it. See: Ayers v. Coughlin, 72 NY 2d 346." Rather, the Statute requires that a pre-arraignment detention not be prolonged beyond a time reasonably necessary to accomplish the task required to bring the arrestee to arraignment, existing in judiciary arbitrary violation of Due Process of Law.

17. As the Appellate Division below recognized, this obligation is important given that "the deprivation entailed by pre-arraignment detention is very great with the potential to cause serious and lasting personal and economic harm to the detainee. This deprivation is one as to which no predicate is established in advance, indeed, which may ultimately be found to have been unwarranted," (164 2d at 63).

18. Therefore, "it is against this backdrop and the realities of the arrest process as it exists in large urban centers such as New York County that we review the Appellate Division concluded that the steps leading up to arraignment can generally be accomplished well within 24 hours after arrest and that the delays present in each of the consolidated proceedings here were "unnecessary" within the meaning of CPL

140.20)1)." "We find no reason on this record to disturb this conclusion." "Accordingly, the order of the Appellate Division should be affirmed, without costs."

**19.** In violation of CPL Statute 240, to date, the only discovery information released to the Plaintiff by the previous Legal Aid attorney, Davim Horowitz and then to his replacement from the 18-B panel, Daniel Hupert was merely one police body-camera evidenced on a flash-drive (reviewed by the defendant) to have been fabricated of falsified by video-technicians against approximately five other police body-camera evidence. **See: Exhibit (D)** in which a description of how it was falsified is delineated. Also, current fully discovery laws provide for automatic release of it to defense counsel and to the plaintiff, to which has been violated.

**20.** In violation of CPL Statute 90.45, the defendant's rights to testify before the Grand Jury was blatantly violated by counsel Davim Horowitz, whom denied the Plaintiff his Federal Constitutional and New York State constitutional rights to notice of the proceeding and denied his right to officially sign a waiver of his protected right, by which a malicious felony indictment derived with absolutely implicit insufficient and fabricated evidence, based upon evident perjured testimony by any and all complainants, police and/or witnesses, according to the factual arresting officer's basis for civilly committing the defendant and releasing him for treatment instead of for prosecution. Because this indictment was secured in violation of the plaintiff's right under CPL statute 190.50, it must be dismissed pursuant to CPL Statute 210.20.

**21.** Pursuant to People v. Gilbert, Honorable Judge Farber, should not have refused to release the Grand Jury minutes to defense counsel or to the Plaintiff without demonstrating "Good Cause" against it.

**22.** The New York Supreme Criminal Court, County of New York, Par 81, presided by Judge Farber, has recordedly denied the defendant his U.S. Constitutional and New York State rights to fully and properly testify in his own defense on each and every court appearance following his felony arraignment court date. Court minutes reflect that upon Legal Aid being requested and granted dismissal by Judge Farber – inspite of his awareness since a former court appearance that Legal Aid had maliciously represented the defendant – he insisted the continual representation by Legal Aid. He also asked Legal Aid whether a 730 examination was warranted following the defendant's Pro se Notice of Motion to Dismiss the

Indictment in the Furtherance of Justice. **See: Exhibit E**, the Legal Argument of which was reflected by the minutes.

**23.** On August 7, 2019, 18-B Panel Attorney, Mr. Hupert Daniel, was appointed counsel for the Plaintiff – against the defendant's July 1, 2019 court appearance, and filed Pro se motion without counsel (whom was aware of the contents of this motion as reflected by many inmate phone calls to him) – initiated the court proceeding by requesting to be relieved from counsel without adopting the above mentioned motion.

**24.** Court minutes reflect that Mr. Hupert indicated a conflict of interest existed, causing the defendant's threat to file a complaint against him. Plaintiff expressed to Judge Farber that "counsel has refused to adopt his motion; refused to cite his motion's Legal Arguments into the record; refused to cite that 'Collateral Estoppel and Res Judicata' effectively terminates the case's prosecution from relitigation due to the case having been litigated via the polices' legal right to civilly commit the plaintiff on March 6, 2019 upon investigating the incident," as reflected by the approximately, additional five existing police body-camera evidence that is being unlawfully withheld from the Plaintiff, against CPL statute 240, Discovery.

**25.** Court minutes reflect that Mr. Hupert was indicated by the Plaintiff to Judge Farber, to have refused to request for a bail reduction or a "Release on his own Recognizance" under the CASES supervised release program that was complied with by the Plaintiff on a previous recent criminal case.

**26.** Court minutes also reflect that the Plaintiff cited People v. Alegandro and People v. Weinberg against the prosecution's defective accusatory instrument or felony complaint.

**27.** Judge Farber, the Assistant District Attorney, and Mr. Hupert, defense counsel, then responded by meeting together by the Judge's podium, whispering off the record to each other, followed by Judge Faber's order for a 730 examination, against U.S. Constitutional, New York State and Mental Hygiene statutory laws. See: People v. Gelikkaya, 197 A.D. 2d 405, 602 NYS 2d 373 (1st Dep't 1993); People v. Idlet, 208 A.D. 2d 649, 617 NYS 2d 489 (2d Dep't, 1994); People v. Parker, 191 A.D. 2d 717, 595 NYS 2d 109 (3d Dep't. 1993); People v. Reason, 37 NY 2d 614, 334 N.E. 2d 572 (1975); People v. Plainty, 238 A.D.

2d 806, 657 NYS 2d 109 (3d Dep't. 1997); People v. Wheeler, 249 A.D. 2d 774, 672 NYS 2d, 155 (3d Dep't. 1998); and, People v. Har, 26 A.D. 3d 836, 307 NYS 2d 777 (4th Dep't. 2002).

**28.** Judge Farber refused to dismiss or reduce the charges for legal insufficiency of the evidence, inadequate legal instructions or defects in the proceeding, recordedly stating on July 1, 2019 that "I have inspected the Grand Jury minutes and find that they are legally sufficient to support the charges and that the proceedings were properly conducted."

**29.** In violation of [CPL Statute 240.40(1)(a), 24080(3)], Judge Farber's (Decision and Order) section #2, stated, "the motion for discovery and a bill of particulars is granted to the 'extent provided by the People with leave to defendant to apply to the court for any additional items unreasonably withheld." The people are reminded of their continued obligation under Brady v. Maryland (373 U.S. 83). Also in violation of CPL Statute 200.95(2)(5), directing the prosecution to comply, timely and fully, with the annexed request for a Bill of Particulars. Furthermore, Brandy/KYles/Vilard/Geaslen demends by Legal Aid pursuant to CPL Statute 240(1)(h), 240.40(1)(a) & 240.80(3), were violated by Judge Farber. **See: Exhibit (F)** – Decision and Order & **Exhibit (G)** – Notice of Omnibus Motion – by Legal Aid.

**30.** The Assistant District Attorney, Brandon Riddle, on April 23, 2019 filed a "Statement of Predicate Violent Felony conviction" in violation of CPL statute, section 40015 and Penal Law section 70.14, and in violation of U.S. Constitutional and New York State Statutory Laws, based upon the present malicious prosecution of the Plaintiff, and to obstruct justice via forgery. **See: Exhibit (H).**

**31.** Legal A id counsel, Davim Horowitz, maliciously represented the Plaintiff since April 9, 2019 by deliberately indifferently refusing to petition the arraignment Judge to dismiss the case; refusing to request the release of the Plaintiff on his own recognizance; nor even to reduce the excessive bail of $25,000 or $50,000 bond, as reflected by the court minutes, despite his statements to the judge that the Plaintiff was already hospitalized for 30 days at Harlem Hospital's psychiatric center and treated over the case, by police on March 6, 2019.

**32.** Court minutes also reflect that Plaintiff requested Mar. Horowitz's re-assignment from counsel due to his refusal to adopt the "Statement of Facts" and the "Legal Arguments" within the filed "Notice of Motion to Dismiss The Indictment In The Furtherance of Justice," on June 19, 2019. **See: Exhibit (I)**, as

also reflected by Plaintiff's inmate phone account records since phone account records since April 10, 2019 – July 1, 2019.

**33.** Plaintiff's inmate phone account records further reflects that between July 1, 2019 – August 7, 2019, 18-B Panel counsel, Mr. Hupert, clearly incriminated himself in malicious representation and negligence, as well as ineffective assistance of counsel, with deliberate indifference and in conspiring with the stark malicious arrest and malicious prosecution case, via mentioning an authored 24 page document against the Illuminati; even as inmate mail records and Certified Return Receipt Request, signed by Mr. Hupert indicated his timely awareness of utilizing the defensive legal argument within the said Motion, as well as the Collateral Estoppel and Res Judicata argument to have the case dismissed. **See: Exhibit (J)** – letters and mail receipts to Mr. Hupert.

**34.** Mr. Hupert, the legal Aid Society, the District Attorney's Office and Judge Farber are all aware of this illuminati report, that was signed to prevent World War III and human extinction and have implicitly declared the Plaintiff a hostage seemingly because of it, and also due to an active lawsuit against the City of New York, in the Bronx Supreme Court, Index No.: 25346/2016. **See: Exhibit (K)** – its filed Summons and Complaint against the City of New York.

Wherefore, the Plaintiff respectfully prays that based on the above, and taking into consideration of the facts and arguments herein, the Plaintiff be released to society upon adjudicating the matter presented to Court upon its merits, and that a Declaratory and Injunctive relief decree be ordered, asserting the proper rights of the accused. As the indictment is requested to be dismissed with extreme prejudice. That also the Government furnishes the certified copies of the Felony Complaint, the Indictment, Bill of Particular, Bill of Discovery, the Arrest Report, and Grand Jury Minutes; and that the Government be prohibited from proceeding with the prosecution. And further, that the State paid attorney, Mr. Hupert be prohibited from waiving the petitioner's rights and be relieved from counsel, via an imposed injunctive relief decree against the matter.

Plaintiff, hereby further request a Restraining Order and Order of Protection against the Government with any other relief by compensatory damages for experiencing extreme undue psychological distress, pain and suffering, loss of wages, etc., that the Court deems just and proper. See Tsesarkaya v. City of

New York, 843 F. Supp. 2d446 (2012); Jackson v. City of New York, 929 F. Supp. 2d 235 (2013); in re

Victoria W., 35 Misc. 3d 1221 (A), 2012); 953 NYS 2d 554, 2012 NY, slip OP. 50809(u).

Dated:  1 - 28 - 2020

Truly Yours...

Michael Nieves, Pro Se

Sworn To Before Me This
/9ᵗʰ day of _January_ 2020.

DANA LYNN MAHONEY
Notary Public, State of New York
No. 02MA6277635
Qualified in Orange County
Commission Expires March 11, 20 21

EXHIBIT (A)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 81

---

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br><br>-against-<br><br>MICHAEL NIEVES,<br><br>Defendant. | PEOPLE'S<br>VOLUNTARY<br>DISCLOSURE FORM<br><br>Ind. No. 01241/2019 |

The People of the State of New York hereby voluntarily disclose to the defendant the following factual information pertaining to the above-captioned case:

## A.    BILL OF PARTICULARS

1.    OCCURRENCE

    Date:            March 6, 2019
    App. Time:       07:30 am
    Place:           561 West 141 Street New York, NY

2.    ARREST

    Date:            April 9, 2019
    App. Time:       06:50 am
    Place:           681 Clarkson Avenue Brooklyn, NY 11203

## B.    NOTICES

1.    STATEMENTS

    ☒ If checked, notice is hereby served, pursuant to CPL §710.30(1)(a), that the People intend to offer at trial evidence of a statement made by defendant to a public servant. *(Where a statement has been recorded on video, counsel should contact the assigned assistant district attorney to arrange a mutually convenient time for viewing the recording or should provide a blank DVD for copying.)*

    Statement Number:                    1
    Defendant (if more than one):        Michael Nieves
    Date:                                March 6, 2019
    Approximate Time:                    08:30
    Location:                            in transit to Harlem Hospital
    Individual Made To:                  Police Officer James Marcinek

Substance of statement:                    <u>I was trying to kill myself by smoke inhalation</u>

2.    IDENTIFICATION

☐ If checked, notice is hereby served, pursuant to CPL §710.30(1)(b), that the People intend to offer at trial testimony regarding an observation of defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the indictment, to be given by a witness who has previously identified defendant.

C.    **DISCOVERY**

1.    ADDITIONAL STATEMENTS

☐ If checked, the People hereby disclose written, oral or recorded statements of a defendant or of a co-defendant to be jointly tried, made, other than in the course of the criminal transaction, to a public servant engaged in law enforcement activity or to a person then acting under his direction or in cooperation with him, and which statements are not given in section B(1) above. CPL §240.20(1)(a).

2.    GRAND JURY TESTIMONY

☐ If checked, defendant or a co-defendant to be tried jointly testified before the Grand Jury relating to this criminal action. CPL §240.20(1)(b). *Such testimony is available upon payment of a stenographic fee.*

3.    SCIENTIFIC AND MEDICAL REPORTS

☐ If checked, the People hereby disclose written reports or documents or portions thereof, concerning a physical or mental examination or scientific test or experiment, relating to this criminal action, which were made by, or at the request or direction of a public servant engaged in law enforcement, or by a person whom the People intend to call as a witness of a trial, or which the People intend to introduce at trial. CPL §240.20(1)(c).

4.    PHOTOGRAPHS AND DRAWINGS

☒ If checked, there exist photographs or drawings relating to this criminal action which were made or completed by a public servant engaged in law enforcement, or which were made by a person whom the People intend to call as a witness at trial, or which the People intend to introduce at trial. CPL §240.20(1)(d). *(Counsel should contact the assigned assistant district attorney to arrange a mutually convenient time to examine this material.)*

2

5.     INSPECTION OF PROPERTY

☐ If checked, there exist photographs, photocopies or other reproductions made by or at the direction of a police officer, peace officer or prosecutor of property prior to its release pursuant to the provisions of Penal Law Section 450.10, irrespective of whether the People intend to introduce at trial the property or the photograph, photocopy or other reproduction. CPL §240.20(1)(e). *(Counsel should contact the assigned assistant district attorney to arrange a mutually convenient time to examine this property.)*

6.     OTHER PROPERTY

☐ If checked, there exist other property obtained from the defendant, or a co-defendant to be tried jointly, CPL §240.20(1)(f), or from another source. *(Counsel should contact the assigned assistant district attorney to arrange a mutually convenient time to examine this property.)*

7.     TAPES AND ELECTRONIC RECORDINGS

☒ If checked, there exist tapes or other electronic recordings which the People intend to introduce at trial, irrespective of whether any such recording was made during the course of the criminal transaction. CPL §240.20(1)(g). *(Counsel should contact the assigned assistant district attorney to arrange a mutually convenient time to listen to the tapes or provide a blank tape for copying.)*

8.     BRADY MATERIAL

☐ If checked, there is material appended which the People are required to turn over pursuant to the United States or the New York State Constitution. The People are aware of their continuing obligation to disclose exculpatory information to defendant and intend to satisfy that obligation as required by law. CPL §240.20(1)(h).

9.     COMPUTER OFFENSES

☐ If checked, discovery is hereby served pursuant to CPL §240.20(1)(j) of the time, place and manner of notice given pursuant to Penal Law §156.00(6), which governs offenses for Unauthorized Use of a Computer (Penal Law §156.05) and Computer Trespass (Penal Law §156.10).

10.   VEHICLE AND TRAFFIC LAW OFFENSES

☐ If checked, the People hereby disclose written reports or documents or portions thereof, concerning a physical examination, a scientific test or experiment, including the most recent record of inspection, or calibration or repair of machines or instruments utilized to perform such scientific tests or experiments and the certification certificate, if any, held by the operator of the machine or instrument, which tests or examinations were made by or at the request or direction of a public servant engaged in law enforcement activity, or which was made by a person whom the People intend to call as a witness at trial, or which the People intend to introduce at trial. CPL §240.20(1)(k).

11.   POLICE OFFICERS INVOLVED

The following are some of the officers who were involved in the arrest or police investigation.

| Name | Shield | Command |
|------|--------|---------|
| Fire Marshal Philip Meagher | 38 | Bureau of Fire Investigations |
| Police Officer James Marcinek | 20371 | 30th Pct |
| Police Officer Rufian Arshad | 20210 | 30th Pct |

12.   SEARCH WARRANTS

☐ If checked, a search warrant was executed during the investigation of this case.

D.   **DEMAND FOR NOTICE OF ALIBI**

Pursuant to CPL §250.20, the People hereby demand that defendant supply the District Attorney with (a) the place or places where the defendant claims to have been at the time of the commission of the crime(s) and (b) the names, residential addresses, places of employment and addresses thereof of every alibi witness upon whom defendant intends to rely to establish his presence elsewhere than at the scene of the crime at the time of its commission, and of every witness in support of such defense. Within a reasonable time after the receipt of the information specified above, the District Attorney will submit a list of any rebuttal witnesses, their addresses, and employers.

E.   **RECIPROCAL DISCOVERY**

Pursuant to CPL §240.30(1), the People hereby demand that defendant supply the District Attorney with (a) any written report or document, or portion thereof, concerning a physical or mental examination, or scientific test, experiment, or comparisons, made by or at the request or direction of the defendant, if the defendant intends to introduce such report or document at trial, or if defendant has filed a notice of intent to proffer psychiatric evidence and such report or document which relates thereto or if such report or document was made by a person other than defendant, whom defendant intends to call

4

as a witness at trial; and (b) any photograph, drawing, tape, or other electronic recording which the defendant intends to introduce at trial.

**NOTE**: Any defense motion or request addressed to the above-captioned case should be directed to the attention of the assistant district attorney named below, who is assigned to this case.

Dated:   New York, New York
         April 23, 2019

Brandon Riddle
Assistant District Attorney
(212) 335-4130

5

# Mental Illness

# Committee on Untreated Mental Illness

## Police Chiefs: Persons with Serious Mental Illness Increasingly Involved with Police

### *Criminal Justice System Not the Solution*

Decades ago persons with serious mental illness were institutionalized, often in deplorable facilities with little or no care. In some cases, persons with mild forms of mental illness were undiagnosed and lived out their lives in these facilities. In recent times these facilities were eliminated, and a model which advocates for deinstitutionalization took its place. While this model works well for persons with mild forms of mental illness and even for those with more severe forms of mentalillness with appropriate treatment and medications, there are those who require more in depth care. But when those persons do not get that care, by choice or otherwise, it is not uncommon that they exhibit behaviors which arouse suspicion, curiosity, and in some cases, also violate the law. When persons act out, exhibit strange behavior or appear disturbed, the police are often on the front lines of those calls from the public. While police are trained for a variety of situations, they are not therapists. Police do not provide treatment – they do not prescribe medications. But they are sometimes faced with a dilemma. How to protect someone who is a danger to themselves or others? Adding to the frustration is finding appropriate medical or mental health resources at a time when services are being cut. One officer noted, "What can we do when we have someone who wants to fight people on the street, or is disruptive in a convenience store and needs mental health treatment at 3:00 in the morning and there are no beds available? No shelters? No detox facilities? By taking someone to lockup and getting them off the street to a place where they are warm and fed is sometimes the only option. In good conscience, we can't leave them to hurt someone or themselves." But cops are the first ones to say that the criminal justice system is not the place to address the issues of those with mental illness. It is an option of last resort that has more commonly become the first option because of lack of services, funding, and empathy.



"What can we do when we have someone who wants to fight people on the street, or is disruptive in a convenience store and needs mental health treatment at 3:00 in the morning and there are no beds available? No shelters? No detox facilities? By taking someone to lockup and getting them off the street to a place where they are warm and fed is sometimes the only option. In good conscience, we can't leave them to hurt someone or themselves."

The New York State Association of Chiefs of Police (NYSACOP) has been an advocate for appropriate services for persons with serious mental illness, including Assisted Outpatient Treatment, where appropriate.

Case 1:20-cv-00170-LJO Document 2 Filed 03/05/20  Page 18 of 66

- Police calls related to people with untreated serious mental illness are <u>increasingly common</u> and consume a large amount of police resources. These calls most commonly involve:
  - o <u>Suicide</u>
  - o Quality of life offenses (disorderly conduct, trespassing, nuisance offenses)
  - o Assault and threats of assault
  - o Substance abuse
  - o Pyromania
  - o Domestic Abuse
  - o <u>Homelessness</u>
  - o <u>Homicide</u>
  - o <u>Attacks on officers</u>
  - o <u>Justifiable homicides by officers</u>
- The condition of the individuals officers are being called to respond to seems to be poorer than in the past. They are more severely ill.
- There have been many <u>preventable tragedies in NYS</u>
- There are fewer hospitals willing to admit those who need medical intervention. <u>New York State is short 4,000 psychiatric beds</u> assuming perfect community services existed.
- New Yorkers are <u>more likely to be incarcerated</u> for mental illness than hospitalized
- People with untreated serious mental illness sometimes present a threat to themselves or others.
- District attorneys, public defenders and court calendars are being overwhelmed.

## Consequences

- There are frequent "round-trippers": individuals who are stabilized, released, abandon their treatment, and deteriorate again to the point where police intervention occurs
- Officers have to drive far away to find an appropriate hospital
- Officers have to sit hours before the hospital examines or admits the person
- Hospitals refuse to admit and discharge before fully stabilized
- Involuntary treatment is largely only available *after* individuals become 'danger to self or others' rather than to prevent dangerousness
- <u>Police are often forced to take those who need treatment to jails instead.</u>

## Solutions

NYSACOP believes the following will help prevent individuals with untreated serious mental illness from becoming a criminal justice responsibility and will keep public, police and patients safer, while saving money to tax payers.

- <u>NYSACOP</u> and the International Association of Chiefs of Police (<u>IACP</u>) endorsed greater use of Assisted Outpatient Treatment (AOT) (known as <u>Kendra's Law</u> in New York State). <u>AOT allows courts to order a small group of the most seriously ill who have already had multiple incidents of homelessness, arrest, violence, and/or hospitalization to stay in mandated and monitored treatment as a condition of</u>

living in the community it has successfully cut arrest, violence and hospitalization 70% each. NYSACOP supports wider use of AOT.

- Evaluate mentally ill prisoners for potential inclusion in AOT prior to their release.
- Evaluate involuntarily committed hospital patients for inclusion in AOT prior to their release.
- Provide a mechanism to allow families of people with serious mental illness to inform authorities of people who could benefit from AOT and require the authorities to determine if AOT or alternative services could help.

- <u>Mental Health Courts</u>. Mental Health courts do after a crime has been committed, what AOT does before: it allows courts to order certain persons with serious mental illness to stay in treatment.
- <u>Police Training</u>. Because police have become first responders for the seriously ill, government should provide funds for specialized training for all officers within the police academies. All officers will come into frequent contact with persons with untreated serious mental illness so all should be trained. Until that time, Crisis Intervention Training (CIT) should be funded for select officers within departments.
- Greater availability of hospitals. As <u>NYSACOP noted in an op-ed</u>, as hospital availability decreases, incarceration increases. NYSACOP believes there should be easier access to hospitals for individuals with serious mental illness so police do not have to drive hours to find a hospital or wait hours for someone to be admitted. Once admitted, patients should be fully stabilized and connected to whatever services are needed to maintain that stability back in the community. As state hospitals close, local emergency rooms become overcrowded. NYSACOP supports a moratorium on closing state psychiatric beds and the building of more facilities.

**Out of sight...**
America's mentally ill held in:
Per 100,000 adults

- Greater role for law enforcement. Because treatment of the untreated seriously mentally ill has become a law enforcement responsibility, state legislators committees, and task-forces considering mental health policy should consult with NYSACOP and other professional police organizations and include them in their deliberations.
- Expand community services that are specifically and narrowly targeted to the most seriously ill and are evidence based to improve meaningful outcomes like reducing homelessness, suicide, arrest, and incarceration.

Chief/Ret. Michael Biasotti said, "It is this association's goal to decrease the frequency of negative interactions between the police and those with mental illness."

Individuals interested in helping those efforts should contact the NYSACOP Committee on Untreated Mental Illness at <u>mentalillness@nychiefs.org</u>

# More information:

Congressional Testimony of former NYSACOP President Michael Biasotti (Video)
Police Chief op-ed in Albany Times Union on psychiatric hospital closures
Police Chief op-ed in Albany Times Union on SAFE Gun control legislation
Police Chief op-ed in New York Daily News on gun control for mentally ill
Police Chief op-ed in New York Post on Kendra's Law
Survey of 2400 senior law enforcement officers on mental illness

# Other Organizations

Mental Illness Policy Org (NYS page here)
New York State Office of Mental Health
Treatment Advocacy Center
NAMI NYS

# New York State Association of Chiefs of Police (NYSACOP) Committee on Untreated Mental Illness:

- Chairperson: Chief (Ret) Michael Biasotti, New Windsor Police Department, NY; 2012-2013 NYSACOP President
- Chief David Zack, Cheektowaga Police Department, NY; 2016-2017 NYSACOP President
- Chief (Ret) Mark Spawn, Fulton Police Department, NY

EXHIBIT (B)

```
Print: Thu, 9 May 19  1339          Nieves,Michael          1102527-3      IP
    Harlem Hospital Center          10119B          Age: 37Y   Sex: M
      506 Lenox Avenue              DOB: 2 Feb 1982     MR# 1102527
      New York, NY  10037           Adm: 8 Mar 19  1500  Dis:
                                    Att Phys: Rahman,Nurur, MD
                                    Service: Psychiatry
```

## Chart Update

Chart Group:   Assessments/Progress Notes/BH  -- continued

Tue, 26 Mar 19

Tue, 26Mar 1556 Psychiatry ShortNote -- cont'd

Hospital Residential-Road to Success Program,
social worker-Ms. Dorsey (718-221-7775);
program's director is Ms. McNight
(718-221-7752). Client is also affiliated
with VNSNY-Brooklyn ACT Team (1630 E. 15ht
Street, 2nd Floor, Brooklyn, NY 11229),
Social Worker (Ms. Stephanie
Shelton-718-840-4920, 347-886-6672, Fax:
914-2204231); Psychiatrist is MD Timothy Jack
(718-840-4920).

*Sherone*

INTERVAL HISTORY
3/26/2019

*Ms. Stevenson Manager*

Patient attended Administrative Hearing this
AM, represented by Mental Hygiene Attorney,
Ms. Becker. Lawyer explained AOT process to
him; he wave his right to appear in court and
promised to cooperate with treatment team;
also accepted plan to discharge him when AOT
is complete; given history of repeat arson
and self-mutilating behaviors

Writer received his medical records from
Interfaith Hospital; Discharged Summary
indicates he was admitted from 2/24/19 to
3/4/19; after calling 911, in the context of
suicide ideation. He reported "I am afraid of
myself right now, because of my history I
will commit suicide." He endorsed fist
psychiatric diagnosis was at age 19. Client
was discharged from Interfaith on 3/4/19 on
Abilify 10 mg PO daily, Bupropion 75 mg PO
BID and Trazodone 100 mg PO QHS, he refused
placement on Abilify Maintena.

Nieves,Michael              1102527-3         10119B      MR# 1102527

EXHIBIT (C)

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-                                                    FELONY

Michael Nieves (M 37),
                                                             ADA Brandon Riddle
                                       Defendant.            (212) 335-4130

Fire Marshal Philip Meagher, Shield #38 of the Bureau of Fire Investigations, states as follows:

*The defendant is charged with:*

| | | |
|---|---|---|
| 1 | PL 140.30(3) | Burglary in the First Degree (defendant #1: 1 count) |
| 2 | PL 150.15 | Arson in the Second Degree (defendant #1: 1 count) |
| 3 | PL 120.25 | Reckless Endangerment in the First Degree (defendant #1: 1 count) |
| 4 | PL 135.10 | Unlawful Imprisonment in the First Degree (defendant #1: 1 count) |

On or about March 6, 2019 at about 8:12 A.M., at 561 West 141 Street in the County and State of New York, the defendant knowingly entered and remained unlawfully in a dwelling with intent to commit a crime therein and in effecting entry and while inside and in the immediate flight therefrom he or another participant in the crime used and threatened the immediate use of a dangerous instrument; the defendant intentionally damaged a building or motor vehicle by starting a fire and another person who was not a participant in the crime was present in such building or motor vehicle at the time and the defendant knew that the circumstances were such as to render the presence of such a person therein a reasonable possibility; the defendant, under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct which created a grave risk of death to another person; the defendant restrained another person under circumstances which exposed that person to a risk of serious physical injury.

*The factual basis for these charges are as follows:*

I am informed by an individual known to the District Attorney's office (informant 1) that informant 1 was inside of a bedroom in their home at the above described location when defendant entered the bedroom and locked himself inside of the bedroom with informant 1. I am further informed by informant 1 that defendant moved the dresser in front of the door so that informant 1 could not leave. I am further informed by informant 1

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

Michael Nieves (M 37),

Defendant.

FELONY

ADA Brandon Riddle
(212) 335-4130

that while inside of the bedroom informant 1 observed defendant lighting a lighter in a way
that caused informant 1 to fear for her safety. I am further informed by informant 1 that
informant 1 and defendant struggled over the dresser as informant 1 tried to move it out of
the way. I am further informed by informant 1 that when informant 1 successfully moved
the dresser away from the door defendant fled the bedroom and entered bathroom. I am
further informed by informant that while defendant was inside of the bathroom informant
began to see smoke coming out of the bathroom.

I am informed by Police Officer James Marcinek, Shield #20371, of the New
York Police Department, that when he arrived at the above described location he observed
defendant in the bathroom and the shower curtain, rug, and towels were on fire. I observed
damage to the wall inside the bathroom, the toilet, and the floor.

False statements made in this written instrument are punishable as a class A
misdemeanor pursuant to section 210.45 of the Penal Law, and as other crimes.

Fire Marshal Philip Meagher                          Date 4/9/19        Time 5:05pm

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

THE PEOPLE OF THE STATE OF NEW YORK

-against-

MICHAEL NIEVES,

Defendant.

---

THE GRAND JURY OF THE COUNTY OF NEW YORK, by this indictment, accuses the defendant of the crime of **BURGLARY IN THE FIRST DEGREE**, in violation of Penal Law §140.30(3), committed as follows:

The defendant, in the County of New York, on or about March 6, 2019, knowingly entered and remained unlawfully in the dwelling located at 561 West 141 Street, with intent to commit a crime therein, and, in effecting entry and while in the dwelling and in immediate flight therefrom, he used and threatened the immediate use of a dangerous instrument.

SECOND COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **ARSON IN THE SECOND DEGREE**, in violation of Penal Law §150.15, committed as follows:

The defendant, in the County of New York, on or about March 6, 2019, intentionally damaged the building located at 561 West 141 Street, by starting a fire and a person who was not a participant in the crime was present in such building at the time, and the defendant knew that fact, and the circumstances were such as to render the presence of such a person therein a reasonable possibility.

THIRD COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **BURGLARY IN THE SECOND DEGREE**, in violation of Penal Law §140.25(2), committed as follows:

The defendant, in the County of New York, on or about March 1, 2019, knowingly entered and remained unlawfully in a building located at 561 West 141 Street with intent to commit a crime therein, and said building was a dwelling.


FOURTH COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **RECKLESS ENDANGERMENT IN THE FIRST DEGREE**, in violation of Penal Law §120.25, committed as follows:

The defendant, in the County of New York, on or about March 6, 2019, under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct which created a grave risk of death to another person.

FIFTH COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **UNLAWFUL IMPRISONMENT IN THE FIRST DEGREE**, in violation of Penal Law §135.10, committed as follows:

The defendant, in the County of New York, on or about March 6, 2019, restrained another person under circumstances which exposed that person to a risk of serious physical injury.

CYRUS R. VANCE, JR.
District Attorney

## ADDITIONAL LEGAL AND CONSTITUTIONAL GROUNDS TO DISMISS THE CRIMINAL CHARGES AND THE INDICTMENT:

First Count:

The defendant, in the County of New York, on or about March 6, 2019, had been found by the New York City Police responding to the 911 call to have lacked (not possess) the "capacity," "intent" nor "mental culpability" to have (knowingly) entered and remained unlawfully in the dwelling located at 561 West 141 Street, with the intent to commit a crime therein, and in effecting entry and while in the dwelling and in the immediate flight therefrom, used and threatened the immediate use of a dangerous instrument), which has been clearly and convincingly, legally substantiated by the People's Voluntary Disclosure Form, Index No. 01241/2019, Subdivision B. Notices, 1. Statements (1) by defendant: Michael Nieves; date: March 6, 2019; Approximate Time: 08:30 A.M.; location: in transit to Harlem Hospital; individual made to: Police Officer James Marcinek, Shield #20371; and Substance of Statement: "I was trying to kill myself by smoke inhalation."

Wherein the Police's legal decision and determination to have Mr. Nieves, Michael hospitalized for emergency psychiatric treatment and for medical attention due to second degree burns to h is right

hand and firearm, while swallowing a phenomena-up crack stem was supported
by their body-camera recordings of their intervention in the incident,
whereby their statement upon leaving Harlem Hospital's Emergency Room
recordedly stated that "we're not arresting you.""You need treatment."
Which had been a reiteration of their initial intent to not arrest Mr.
Nieves upon evaluating the informants of this case.

   Mr. Nieves, cites Article 15 of the New York Criminal Procedure
Law §15.00 Culpability, Subdivision 6. "Culpable mental state" means
"intentional" or "knowingly" or "recklessly" or with "criminal negligence,"
and, also Article 40 of the same, §40.15 Mental disease or defect – "In
any prosecution for an offense, it is an affirmative defense that when
the defendant engaged in the proscribed conduct, he lacked criminal re-
sponsibility by reason of mental disease or defect. Such lack of criminal
responsibility means that at the time of the conduct, as a result of
mental disease of defect, he lacked substantial capacity to know or app-
reciate either:
   1. The nature and consequences of such conduct; or
   2. That such conduct was wrong.
   Pursuant to §140.30 Burglary in the first degree, consist also of
the elements to the crime, as follows:
   1.Is armed with explosives or a deadly weapon; or
   2. Caused physical injury to any person who is not a participant in
      the crime; or
   3. Uses or threatens the immediate use of a dangerous instrument; or
   4. Dispays what appears to be a pistol, revolver, rifle, shotgun,
      marchine gun or other firearm; except that in any prosecution
      under this subdivision, it is an affirmative defense that such
      weapons was not a loaded weapon from which a shot readily capable
      of producing death or other serious physical injury, could be
      discharged.

   Based on the facts stated in Argument I of the previously submitted
and recorded "Motion To Dismiss Criminal Charges" ricited into the minutes
of the New York Supreme   Court, by Mr. Nieves, Michael on April 24, 2019
constituted a violation of his Constitutional Rights. See the Fourth
Amendment: "no Warrent shall issue, but upon probable cause;" the Fifth
Amendment: "nor shall any person be subject for the same offense to be

twice put in jeopardy of life or limb; nor shall be compelled in any
criminal case to be a witness against himself, nor be deprived of life,
liberty, or property, without due process of law; see also: the Eighth
Amendment: "excessive bail shall not be required, nor excessive fines
imposed, nor cruel and unusual punishment inflicted," and also see the
Nineth Amendment: "The enumeration in the Constitution of certain rights,
shall nnot be construed to deny or disparage others retained by the
people.

Second Count:

The defendant, in the County of New York, on or about March 6, 2019
had been found by the New York City Police responding to the 911 call to
have lacked (not possessed) the "capacity," "intent," nor "mental culp-
ability" to have (intentionally) damaged the building located at 561 West
141 Street, by starting a fire and a person who was n ot a parti ipant in
the crime was present in such building at the time, and the defendant
knew that fact, and the circumstances were such as to render the presence
of such therein a reasonable possible.

Please se page 2 herein to substantiate the legal definition of
"intentional" with respect to possessing a "cupable mental state," by
which is furt her corroborrated by a conspiracy between the New York City
Police and the  Fire Marshalls: Mr. Meagher, Philip whom quoted Police
Officer James Marcinek, Sheild #20371 within the "Felony  Complaint Report"
to ADA Brendon Riddle, dated 4/9/19, 5:05 P.M., on page 2 of 2, last
paragraph that "that when he [Officer Marcinek] arrived at the above de-
scribed location he observed defendant in the bathroom and the shower
curtain, rug, and t owels were  on fire. I observed damage to the wall
inside the bathroom, the toilet, and the floor.

Please also note the bottom line disclaimer of this page in question:
"False Statements made in this written instrument are punishable as a mis-
demeanor  pursuant to section 210.45 of the Penal Law, and as other crimes."

Respectively,  the Police's body-camera and other eye-witnesses of this bathroom's condition upon Mr. Nieves's removal, clearly and convincingly substantiates officer Marcinek's "False Statement," via evidence of the shower curtain and rug not being oo fire, and the toilet was not damaged.  Otherwise, the fire department would have had to extingusih a massive fire that would have spread throughout the apartment and building, if these items were on fire, which apparently did not occure.

Also, please note the felony complaint's date: 4-9-19 at 5:05 PM, signifying the rash and disorganized criminal report's nature.

Third Count:

The defendant, in the County of New York, on or about March 6, 2019 had been found by the New York City Police responding to the 911 call to have lacked (not possessed the "capacity," "intent," nor "mental culpability" to have "knowingly entered and remained unlawfully in the building located at 561 West 561 Street with the intent to commit a crime therein and said building was a dwelling," which is supported by the Second Count's refuting facts aforementioned, above.

Fourth Count:

The defendant, in the  County of New York, on or about March 6, 2019 had been found by the New YOrk City Police responding to the 911 call to have lacked (not possessed) the "capacity," "intent" nor "mental culpability" to have "under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct which created a grave risk of death to another person, which is supported by the previous facts aforementioned, above under Count Two and Count One, concerning Mr. Nieves's hospitalization instead of being arrested.

Furthermore, pursuant to Article 15 Culpability §15.15, Practice Insights: Handling Charges Alleging Depraved Indifference to human life, by John M. Castellano, ESQ., Member of New York Bar. INSIGHT: "Perhaps no issue in New York criminal law has been more debated of late then the meaning of 'depraved indifference' to human life. After years of controversy, the New York Court of Appeals has substantially altered this

statutory element, requiring close attention on the part of all criminal practitioners handling these types of cases. While previously depraved indifference could be established by showing that a defendant's conduct objectively presented a very high degree of risk of death, now prosecutor must prove that the defendant possessed a subjective state of mind evidencing "wickness," "wantonness," or a "mischievous disregard" for the consequences of his acts. This new mental state - requires additional proof that prosecutors may have difficulty adducing in a particular case.

difference murder is not a substitute for, or lesser included offense of, intentional murder. Practitioners must respond to these changes. Prosecutors should refrain from charging depraved indifference crimes where the conduct appears intentional and should instead reverse depraved crimes for the most unusual case. Defense counsel should be alert any time depraved idifference is charged, assessing whether their client's depraved counts was truely "wicked" or simply dangerous or misguided. Counsel should move to dismiss depraved counts where the prosecution theory is arguably unsupported and, failing that, must ensure that the court properly charges the jury on the new requirement so that the defendant may benefit from the additional requirement of proof.

ANALYSIS: Paragraph 6, line-8. Thus, where the defendant creates an explosion in a residential building knowing full well that many people could be killed, counsel can argue that the defendant only wanted to commit suicide and had no desire to harm anyone else. Similarly, where a defendant acts in a highly reckless manner by drinking heavily and then driving the wrong way on a parkway, counsel can argue that the defendant was too intoxicated to form the willful intent required for depraved murder. cf. People v. Valencia 14 N.Y. 3d 927, 906 N.Y.S. 2d 515, 923 N.E. 2d 871 (2010).

Furthermore, based on the Felony Complaint Report to ADA Brandon Riddle, signed by Fire Marchel Philip Meagher, page 2 of 2, line-2, states "I am further informed by informant 1 that informant 1 successfully moved the dresser away from the door defendant fled the bedroom and entered the bathroom." This quoted statement is also an obvious "False Statement" whereby the Police's body-camera recordings of their investigation of the incident on March 6, 2019 should confirm that this struggle over a dressor never occurred, which would have been a focal point of the police's initial report. Also, how could have a woman overpowered the physical strength of the defendant without sustaining any injuries, while the police's body-camera recordings should substentiate the brief, intense struggle of the defendant against the police's body-shield's entrance into the bathroom's door upon it's slightly being opened by police. Police officers whom released the defendant to Harlem Hospital emergency room, nearly exactly before their exiting the hospital should prove one of them

stating a misperception of the defendant's attempt to stab the officer
whhom possesed the body-shield witha crack pipe to fight off their entrance
into the bathroom, which was explained by the defendant's protest for them
to review the body-camera recordings closely which proves defendant's mis-
understood actions of the defendant's mere attempt to vigorously push away
their body-shield while holding a broken crack pipe. Thus, this informant 1
must be deceiving the People of the State of New York after having been
influenced to do so by the fire marshels and/or police.

Fifth Count:

    The defendant, in the County of New York, on or about March 6, 2019
had been found by the New YOrk City Police responding to the 911 call to
have lacked (not possessed) the "capacity," "intent," nor "mental culpabili
to have restrained another person under circumstances which exposed that
person to a risk of serious physical injury, in that primarily, "serious
physical injury" means an imminent and present deadly potential exposure
to the informant, wherein the Felony  Complaint Report clearly states that
"informant 1 observed defendant lighting a lighter in a way that caused
the informant to fear for her safety." This statement conclusively confirms
the defendant's prior Count Four details, above, to have been a "false
statement" with respect to the question into informant 1 alleging to have
successfully struggled with the defendant to move a dresser, in light of
his possession of a flicking lighter as an alleged dangerous instrument
that caused her to fear for her life. Logically, her statements therein
clearly contradicts themselve and must be fabrications influenced by this
officers in order to falsify the Felony Complaint Report.

Conclusion:

    Based on the above facts and arguments and based on the attached
printout of "Psychiatric examinations and Custody/LawFActs" it is clearly
stated in fact #: 3 beneath "Can the Police take a person to a hospital
for a psychiatric examination" if the officer believes that: The person's
mental disorder is likely to cause them to harm themselves or another person
Sometimes an officer will take the person to the Hospital [instead] of
charging them with a criminal offence (if they have grounds to do so). This
clearly means that the police are not suppose to arrest and charge the

person for a criminal offence under these cirumstances. Please also see relative statutory and case laws below to further support the Indictments dismissal:



An individual is guilty of burglary in the first degree if he enters a dwelling at night with the requisite mental state and, while inside the dwelling, "causes physical injury to any person who is not a participant in the crime." People v Perrin, 56 A.D.2d 957, 392 N.Y.S.2d 723, 1977 N.Y. A.D. LEXIS 11368 (N.Y. A.D. 3d Dep't 1977).



Convictions of burglary in the first degree, N.Y. Penal Law § 140.30(3) and menacing in the second degree, N.Y. Penal Law § 120.14(1) were reversed because evidence that defendant displayed a taser or stun gun was insufficient to establish the "dangerous instrument" element of those crimes. People v Morillo, 104 A.D.3d 792, 960 N.Y.S.2d 224, 2013 N.Y. A.D. LEXIS 1523 (N.Y. A.D. 2d Dep't 2013), app. denied, 22 N.Y.3d 1201, 986 N.Y.S.2d 421, 9 N.E.3d 916, 2014 N.Y. LEXIS 1205 (N.Y. 2014).



Court's instruction with respect to first degree burglary charge was deficient since it failed to properly communicate that defendant's liability for burglary was dependent on whether or not he possessed intent to commit crime at time he entered apartment. People v Montalvo, 183 A.D.2d 528, 584 N.Y.S.2d 300, 1992 N.Y. A.D. LEXIS 7285 (N.Y. A.D. 1st Dep't 1992).



Evidence that victim suffered "physical injury" supported defendant's conviction of first degree burglary where victim suffered bruises on his hands lasting more than one month, lasting pain in his jaw which caused difficulty with eating, and other cuts and bruises. People v Lancia, 150 A.D.2d 799, 542 N.Y.S.2d 228, 1989 N.Y. A.D. LEXIS 7275 (N.Y. A.D. 2d Dep't 1989), app. denied, 75 N.Y.2d 869, 553 N.Y.S.2d 301, 552 N.E.2d 880, 1990 N.Y. LEXIS 835 (N.Y. 1990).



Evidence satisfied "physical injury" element of first degree burglary where (1) defendant lunged at victim with screwdriver after victim confronted him during course of burglary of victim's house, (2) victim's fingers were "gouged" or cut, and were bleeding, and (3) victim testified that pain from injuries lasted for more than one week. People v Rosa, 155 A.D.2d 698, 548 N.Y.S.2d 264, 1989 N.Y. A.D. LEXIS 15158 (N.Y. A.D. 2d Dep't 1989).



"Physical injury" element of first degree burglary was established where tenant of burglarized apartment testified that he was in "great pain" for several weeks after being wrestled to ground by defendant and scraping skin off his knee, and tenant's wife testified that she sustained bloody mouth and

file://C:\Program Files\LexisNexis\LNCD4x Kiosk\Print\amkc10-f2bea720.html                        4/16/2019

Page 19 of 20



loosened tooth as result of being punched by defendant. People v McMahon, 157 A.D.2d 548, 549 N.Y.S.2d 733, 1990 N.Y. A.D. LEXIS 379 (N.Y. A.D. 1st Dep't), app. denied, 75 N.Y.2d 921, 555 N.Y.S.2d 40, 554 N.E.2d 77, 1990 N.Y. LEXIS 1616 (N.Y. 1990).



Where defendant with a history of hospitalizations and arrests for violent acts set fire to an occupied building while he was drinking and suffering heroin withdrawal, he was found not responsible for arson and reckless endangerment by reason of mental disease or defect. The trial court did not err by including an effective-evaluation provision in the amended order of conditions for his release from a secure mental health facility, because he posed a public safety risk. Matter of Allen B. v Sproat, 23 N.Y.3d 364, 991 N.Y.S.2d 386, 14 N.E.3d 970, 2014 N.Y. LEXIS 1095 (N.Y. 2014).

## 8. — —Insufficient

Where indictment charged arson in the second degree but facts contained in indictment were sufficient only to sustain charge of arson in third degree and defendant pled guilty to facts amounting to arson in third degree, sentence for arson in the second degree was improper and would be remanded for resentencing for crime of arson in third degree. People v Hutchins, 43 A.D.2d 412, 352 N.Y.S.2d 520, 1974 N.Y. A.D. LEXIS 5665 (N.Y. A.D. 3d Dep't 1974).



Evidence supported convictions of second degree arson and first degree reckless endangerment where (1) fire was set with combustible materials or liquid in at least 3 locations inside building, and gas leak was deliberately started inside building, resulting in explosion, and (2) only means of ingress or egress was front door, one defendant was seen working on heater inside building prior to explosion, both defendants left building together 15 minutes before explosion, defendants locked security gates behind them, no one else was seen entering or leaving building thereafter, and expert testified that it would have taken 20 minutes or less for enough gas to accumulate to result in explosion. People v Mann, 125 A.D.2d 711, 510 N.Y.S.2d 196, 1986 N.Y. A.D. LEXIS 62963 (N.Y. A.D. 2d Dep't 1986).



Evidence supported conviction of first degree reckless endangerment, even though no one suffered actual harm, where defendant set 5 separate fires in apartment building which he knew to be inhabited, after threatening neighbors that he was going to do so. People v Anderson, 216 A.D.2d 257, 629 N.Y.S.2d 223, 1995 N.Y. A.D. LEXIS 7127 (N.Y. A.D. 1st Dep't), app. denied, 86 N.Y.2d 840, 634 N.Y.S.2d 449, 658 N.E.2d 227, 1995 N.Y. LEXIS 4522 (N.Y. 1995).



A person who starts a fire under circumstances evidencing a depraved indifference to human life and recklessly causes the death of another person may properly be charged with both arson and homicide. If the other person is not killed but is seriously injured, the perpetrator may then be properly charged with both arson and assault. If the other person is neither killed nor seriously injured, but is recklessly exposed to a grave risk of death, then the perpetrator may be properly charged with both arson and reckless endangerment. People v Rodriguez, 110 Misc. 2d 828, 442 N.Y.S.2d 948, 1981 N.Y. Misc. LEXIS 3170 (N.Y. Sup. Ct. 1981).



Unlawful imprisonment in second degree is lesser included offense of unlawful imprisonment in first degree; in order to be found guilty of unlawful imprisonment in first degree, it is only necessary that one restrained be exposed to risk of serious physical injury; where injury is inflicted prior to restraint, there is reasonable view of evidence which would entitle jury to find that while defendant committed lesser crime he did not commit greater. People v Subik, 112 A.D.2d 480, 490 N.Y.S.2d 894, 1985 N.Y. A.D. LEXIS 55835 (N.Y. A.D. 3d Dep't 1985).



Although the restraint element of the crime of unlawful imprisonment in the first degree under N.Y. Penal Law § 135.10 was shown, there was no evidence that defendant's conduct exposed the victim to a risk of serious physical injury when her hands were tied and, thus, the conviction under count 6 was reduced to unlawful imprisonment in the second degree. People v Daniels, 97 A.D.3d 845, 948 N.Y.S.2d 431, 2012 N.Y. A.D. LEXIS 5247 (N.Y. A.D. 3d Dep't), app. denied, 20 N.Y.3d 931, 957 N.Y.S.2d 691, 981 N.E.2d 288, 2012 N.Y. LEXIS 3948 (N.Y. 2012).



New York's unlawful imprisonment statute, is divisible into two crimes: the unlawful imprisonment of a competent adult, which cannot be accomplished without use or threat of force under N.Y. Penal Law §§ 135.10, 135.00(1)(a), and the unlawful imprisonment of an incompetent person or child under 16, which can be accomplished without force under N.Y. Penal Law §§ 135.10, 135.00(1)(b); therefore the unlawful imprisonment of competent adult is always a crime of violence pursuant to 18 U.S.C.S. § 16, but that the unlawful imprisonment of an incompetent person or child under 16 is not a crime of violence pursuant to § 16. Dickson v Ashcroft, 346 F.3d 44, 2003 U.S. App. LEXIS 18565 (2d Cir. 2003).



Depraved indifference has the same meaning in N.Y. Penal Law § 120.25, pertaining to first degree reckless endangerment, and in N.Y. Penal Law § 125.25(2), pertaining to depraved indifference murder; in both offenses, depraved indifference is a culpable mental state, which is not an objective assessment of the risk involved in particular conduct, but instead, an utter disregard for the value of human life and a willingness to act not because one intends harm but because one does not care whether or not harm results. People v Feingold, 7 N.Y.3d 288, 819 N.Y.S.2d 691, 852 N.E.2d 1163, 2006 N.Y. LEXIS 1830 (N.Y. 2006).



Defendant was improperly convicted of first degree reckless endangerment under N.Y. Penal Law § 120.25 for causing an explosion when he attempted suicide by turning on the gas in his apartment because depraved indifference to human life was a culpable mental state; although a factfinder could reasonably have inferred the requisite mental state from defendant's actions, he could not be found to be depravedly indifferent when the trial court explicitly found that he did not act out of a depraved indifference to the value of the lives of others, and his conviction was therefore reduced to second degree reckless endangerment under N.Y. Penal Law § 120.20. People v Feingold, 7 N.Y.3d 288, 819 N.Y.S.2d 691, 852 N.E.2d 1163, 2006 N.Y. LEXIS 1830 (N.Y. 2006).



Defendant's voluntary act of imbibing alcoholic beverage, knowing that he was prone to criminal acts while drunk and that consumption of even one drink would destroy his ability to resist further drinking, to point of intoxication, constituted recklessness per se; thus, although defendant was not guilty of second degree arson for setting fire to his apartment while intoxicated since he lacked specific intent to damage building, he was guilty of lesser included offense of fourth degree arson, defined as "recklessly damag [ing] building...by intentionally starting fire," and also first degree reckless endangerment. People v Tocco, 138 Misc. 2d 510, 525 N.Y.S.2d 137, 1988 N.Y. Misc. LEXIS 50 (N.Y. Sup. Ct. 1988).



Defendant's conviction of first-degree reckless endangerment was reduced to second-degree reckless endangerment under N.Y. Penal Law § 120.20 because the evidence was insufficient to establish that defendant acted with depraved indifference to human life under N.Y. Penal Law § 120.25 where defendant's flight from law enforcement officers in a motor vehicle was not wantonly cruel or brutal behavior evincing an utter disregard for human life. People v Lostumbo, 107 A.D.3d 1395, 967 N.Y.S.2d 293, 2013 N.Y. A.D. LEXIS 4050 (N.Y. A.D. 4th Dep't 2013).



### 4. Weight of evidence

Verdict convicting defendant of first degree unlawful imprisonment was not against the weight of the evidence because the victim testified that she walked toward the apartment door to leave, but defendant pulled a revolver from his pocket, pointed it at her and told her to sit down and that he was not joking; she further testified that, at different points during the night, defendant struck her and ordered her to go upstairs, go back downstairs and to perform certain sexual acts, and she complied because he had a gun; the jury could infer that the victim was at risk of serious physical injury; and it was plausible that defendant used force or intimidation on that occasion based on his previous acts of domestic violence against her. People v Rosario, 157 A.D.3d 988, 69 N.Y.S.3d 149, 2018 N.Y. A.D. LEXIS 60 (N.Y. A.D. 3d Dep't), app. denied, 31 N.Y.3d 1121, 2018 N.Y. LEXIS 2159 (N.Y. 2018).



## LEGAL ARGUMENT

Pursuant to New York Civil Law, Article 3, Subsection 23 - Privilege from arrest: No person shell be arrested in civil proceedings without a statutory provision. A person shall not be arrested in a civil action or special proceeding, except as prescribed by statute. The writ of ne exeat is abolished. Mr. Nieves had been released from police custody at Harlem Hospital pursuant to Mental Hygiene Law 9.27 & 9.39 and was not a prisoner. See Exhibit (A). Records reflect that patient has displayed no aggressive behavior, but periodically paces the unit. See Exhibit (B). Patient was released for treatment under the chief complaint by BIBEMS and NYPD of trying to set himself on fire. See Exhibit (C), and Exhibit (D). As of March 28, 2019, patient's disposition was to be discharged to shelter when psychiatrically stable.                         Per records patient's medication was changed and an ACT Coordinator had been prescribed: Steffany Shelton @ 347-886-6672, as well as an Assisted Outpatient Treatment court order enforced for substance use treatment and medication compliance.

EXHIBIT (D)

STATEMENT OF FACTS

Please see attached:

---

Please also consider the clear and convincing evidence of the police
body-camera video being fabricated by technicians or engineers based
on the following:

1. The Fire Department of the City of New York, Chief Meacher, Philip's
   cover-page listings of the apartment photograhing indicated that
   their was only one entrance to the dwelling. The scetch or diagram
   of the apartment showed a long hallway before arriving at the bath-
   room where the defendant was rescued from by police.

2. The body-camera video evidence released to Legal Aid and reviewed
   by the defendant showed that upon polices' entrance into the apart-
   ment, there was not a hallway to walk prior to arriving at the
   bathroom. Police made an immediate left right into the bathroom
   doorway without walking through a hallway, circa 1 minute into the
   video, at approximately 8:00 A.M.

3. The video also showed that the defendant was escorted outside of the
   building at approximately 8:16 A.M. by police and then was walked
   about 50 feet away from the building, at which point he was stopped
   by police in front of another building where more police officers
   wearing body-shields exited that entrance.

4. The video further showed that the defendant entered the building at
   7:25 A.M., however police did not arrive at the scene  until about
   8:00 A.M., against evidence that the complainant witnesses 911 call
   occurred approximately at 7:50 or so. Meanwhile only a single pot
   water is showed to have been used by police to that extinguished the
   fire. According to the Felony Complaint Report stating that a curtain
   and rug was on fire versus the photos of the damages enclosed, this
   was a false statement amongst others, and the Complaint was falsified.

4



| Reporting Unit | | | | |
|---|---|---|---|---|
| 1595 | MN | 3 6 19 | | |
| Box # | Boro | Date | Time | Of |
| 561 W 141 STREET | | Address | | PAGE |
| MEAGHER | | COLABATISTTO | | |
| FM / Chief | | | Photographer | |

| Incident Info | |
|---|---|
| 1 | COVER SHEET |
| 2 | CROSS STREETS |
| 3 | FRONT OF BUILDING |
| 4 | Apt 0.8 Front entrance door |
| 5 | View through front entrance door to Kitchen |
| 6 | View from Kitchen to Hallway |
| 7 | Hallway views to bathroom and bedrooms |
| 8 | View from master bedroom showing dresser and doorway |
| 9 | View into bedroom to closet door |
| 10 | Bathroom in closed position |
| 11 | View through open bedroom door |
| 12 | View from bulkhead to towel wall |
| 13 | 2nd bedroom w/ TV from master bed |
| 14 | Closeup of master bed TV in 2nd bedroom |
| 15 | Photo Log |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |







EXHIBIT (E)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF __NEW YORK__

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK,<br><div align="right">RESPONDENT,</div><br><br><div align="center">-AGAINST-</div><br><br>**MICHAEL NIEVES**<br><div align="right">DEFENDANT.</div> | **NOTICE OF MOTION<br>TO DISMISS<br>INDICTMENT IN THE<br>FURTHERANCE OF<br>JUSTICE**<br>PURSUANT TO<br>CPL § 210.40 |

Docket No.: _____

Indict No.: __01241/2019__

NYSID No.: __08896985-z__

PLEASE TAKE NOTICE, that upon the annexed affidavit of **Michael Nieves**

_____, duly affirmed the __27.__ day of __June__ , 20__19__ ,

and upon the indictment and all the proceedings had herein, the under signed will move

this Court __of Manhattan Supreme__ thereof, to be held at the courthouse located at

__100 Center Street__ , county of __New York__ , on the _____

day of __June__ , 20__19__ , at 9:30 o'clock in the forenoon of that day or as

soon thereafter as counsel can be heard for an order dismissing the indictment in the

**FURTHERANCE OF JUSTICE** pursuant to New York State Criminal Procedure

Law, sections 210.40, and any further relief as the court may deem just and proper.

Yours, etc...

_Michael Nieves_

DEFENDANT , **Pro Se**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF __NEW YORK__

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, <br><br> RESPONDENT, <br><br><br> -AGAINST- <br><br> __MICHAEL NIEVES__ , <br> DEFENDANT, | **AFFIDAVIT IN SUPPORT OF MOTION TO DISMISS INDICTMENT IN THE FURTHERANCE OF JUSTICE PURSUANT TO CPL § 210.40** <br><br> Docket No.: _____ <br> Indict. No.: __01241/2019__ <br> NYSID: No.: __08896985-z__ |

STATE OF NEW YORK }
COUNTY OF __NEW YORK__ } s.s.:

I, __Michael Nieves__ , being duly sworn, deposed and state:

I am the defendant in the above-entitled action, and am personally familiar with the facts and circumstances herein stated.

I am a detainee presently being detained at __AMKC/C-95, Rikers Island__ listed hereunder the mailing address of __18-18__ Hazen Street, Rikers Island, East Elmhurst, New York 11370, herein considered the County of the Bronx.

Whereupon, although I am personally familiar with all of the facts and statements hereinafter stated to the best of my knowledge, information and belief, I am a layperson in matters of the law and seek this Court's indulgence for errors, defects and faults pursuant to sec. 2101(f) of the Civil Practice Law and Rules.

On the __9__ day of __April__ , 20 __19__ , a complaint was filed in the Criminal Court of __NEW YORK__ County, charging the said defendant with the

offense(s) of __120.25 00, 140.25 02, 140.30 03, 150.15 00, 135.10__ 00

in violation of New York State Penal Law, section(s) __same as above__ .

Arraignment of the defendant on the above-mentioned complaint took place in this Court on the __9__ day of __April__ , 20 __19__ , and defendant was held for Grand Jury proceedings. Subsequently, defendant was indicted for the aforementioned charges and was arraigned upon said indictment in Supreme Court, __New York__ County, on the __24__ day of __April__ , 20__19__ .

This application is made upon the ground(s) that the indictment or a count thereof should be dismissed pursuant to Section 210.40 of the New York State Criminal Procedure Law, in the furtherance of justice, where even thought there may be no basis for dismissal as a matter of law, such dismissal is required as a matter of judicial discretion by the existence of some compelling factor, consideration, or circumstance clearly demonstrating the conviction or prosecution of the Defendant upon such indictment would constitute or result in injustice.

Whereupon, this Defendant respectfully requests the Court to grant this motion for an order dismissing the indictment in the **FURTHERANCE OF JUSTICE** pursuant to the laws, statutes, and arguments annexed herein.

STATEMENT OF FACTS

**Please see attached:**

---

Please also consider the clear and convincing evidence of the police body-camera video being fabricated by technicians or engineers based on the following:

1. The Fire Department of the City of New York, Chief Meacher, Philip's cover-page listings of the apartment photograhing indicated that their was only one entrance to the dwelling. The scetch or diagram of the apartment showed a long hallway before arriving at the bathroom where the defendant was rescued from by police.

2. The body-camera video evidence released to Legal Aid and reviewed by the defendant showed that upon polices' entrance into the apartment, there was not a hallway to walk prior to arriving at the bathroom. Police made an immediate left right into the bathroom doorway without walking through a hallway, circa 1 minute into the video, at approximately 8:00 A.M.

3. The video also showed that the defendant was escorted outside of the building at approximately 8:16 A.M. by police and then was walked about 50 feet away from the building, at which point he was stopped by police in front of another building where more police officers wearing body-shields exited that entrance.

4. The video further showed that the defendant entered the building at 7:25 A.M., however police did not arrive at the scene until about 8:00 A.M., against evidence that the complainant witnesses 911 call occurred approximately at 7:50 or so. Meanwhile only a single pot water is showed to have been used by police to that extinguished the fire. According to the Felony Complaint Report stating that a curtain and rug was on fire versus the photos of the damages enclosed, this was a false statement amongst others, and the Complaint was falsified.

4



| Reporting Unit | | | | | |
|---|---|---|---|---|---|
| 1545 | MN | 3/6/19 | | | Of |
| Box # | Boro | Date | Time | Roll Count | PAGE |
| 561 W 141 STREET | | | | | |
| MEAGHER | | Address | COLABATIS+to | | |
| FM/Chief | | | | Photographer | |

| Incident type | |
|---|---|
| 1 | COVER SHEET |
| 2 | CROSS STREETS |
| 3 | FRONT OF BUILDING |
| 4 | ADT 68 Fr entrance door |
| 5 | View through door of entrance door to Kitchen |
| 6 | View from Kitchen to Hallway |
| 7 | Hallway View to bathroom and bedroom door |
| 8 | View from into bedroom showing dresser and bathroom |
| 9 | View into bedroom to closet door |
| 10 | Bathroom in closed position |
| 11 | View through open bathroom door |
| 12 | View from bathtub to towel wall |
| 13 | 2nd bedroom w/ TV from master bed |
| 14 | Closeup of master bed TV in 2nd bedroom |
| 15 | Photo Log |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |







## ADDITIONAL LEGAL AND CONSTITUTIONAL GROUNDS TO DISMISS THE CRIMINAL CHARGES AND THE INDICTMENT:

First Count:

The defendant, in the County of New York, on or about March 6, 2019, had been found by the New York City Police responding to the 911 call to have lacked (not possess) the "capacity," "intent" nor "mental culpability" to have (knowingly) entered and remained unlawfully in the dwelling located at 561 West 141 Street, with the intent to commit a crime therein, and in effecting entry and while in the dwelling and in the immediate flight therefrom, used and threatened the immediate use of a dangerous instrument), which has been clearly and convincingly, legally substantiated by the People's Voluntary Disclosure Form, Index No. 01241/2019, Subdivision B. Notices, 1. Statements (1) by defendant: Michael Nieves; date: March 6, 2019; Approximate Time: 08:30 A.M.; location: in transit to Harlem Hospital; individual made to: Police Officer James Marcinek, Shield #20371; and Substance of Statement: "I was trying to kill myself by smoke inhalation."

Wherein the Police's legal decision and determination to have Mr. Nieves, Michael hospitalized for emergency psychiatric treatment and for medical attention due to second degree burns to his right

hand and forearm, while swallowing a chewed-up crack stem was supported
by their body-camera recordings of their intervention in the incident,
whereby their statement upon leaving Harlem Hospital's Emergency  Room
recordedly stated that "we're not arresting you.""You need treatment."
Which had been a reiteration of their initial intent to not arrest Mr.
Nieves upon evaluating the informants of this case.

Mr. Nieves, cites Article 15 of the New York  Criminal Procedure
Law §15.00 Culpability, Subdivision 6. "Cupable mental state" means
"intentional" or "knowingly" or "recklessly" or with "criminal negligence,"
and, also Article 40 of the same, §40.15 Mental disease or defect — "In
any prosecution for an offense, it is an affirmative defense that when
the defendant engaged in the proscribed conduct, he lacked criminal re-
sponsibility by reason of mental disease or defect. Such lack of criminal
responsibility means that at the time of the conduct, as a result of
mental disease of defect, he lacked substantial capacity to know or app-
reciate either:

1. The nature and consequences of such conduct; or
2. That such conduct was wrong.

Pursuant to §140.30 Burglary in the first degree, consist also of
the elements to the crime, as follows:

1. Is armed with explosives or a deadly weapon; or
2. Caused physical injury to any person who is not a participant in
the crime; or
3. Uses or threatens the immediate use of a dangerous instrument; or
4. Dispays what appears to be a pistol, revolver, rifle, shotgun,
marchine gun or  other firearm; except that in any prosecution
under this subdivision, it is an affirmative defense that such
weapons was not a loaded weapon from which a shot readily capable
of producing death or  other serious physical  injury, could be
discharged.

Based on the facts stated in Argument I of the previously submitted
and recorded "Motion To Dismiss  Criminal Charges" ricited into the minutes
of the New York Supreme    Court, by Mr. Nieves, Michael on  April 24, 2019
constituted a violation of his  Constitutional Rights. See the Fourth
Amendment: "no Warrant shall issue, but upon probable cause;" the Fifth
Amendment: "nor shall any person be subject for the same offense to be

twice put in jeoperdy of life or limb; nor shall be compelled in any
criminal case to be a witness against himself, nor be deprived of life,
liberty, or property, without due process of law; see also: the Eighth
Amendment: "excessive bail shall not be required, nor excessive fines
imposed, nor cruel and unusual punishment inflicted," and also see the
Nineth Amendment: "The enumeration in the Constitution of certain rights,
shall nnot be construed to deny or disparage others retained by the
people.

Second Count:
       The defendant, in the County of New York, on or about March 6, 2019
had been found by the New York City Police responding to the 911 call to
have lacked (not possessed) the "capacity," "intent," nor "mental culp-
ability" to have (intentionally) damaged the building located at 561 West
141 Street, by starting a fire and a person who was n ot a parti ipant in
the crime was present in such building at the time, and the defendant
knew that fact, and the circumstances were such as to render the presence
of such therein a reasonable possible.

       Please se page 2 herein to substantiate the legal definition of
"intentional" with respect to possessing a "cupable mental state," by
which is furt her corroborrated by a conspiracy between the New York City
Police and the   Fire Marshalls: Mr. Meagher, Philip whom quoted Police
Officer James Marcinek, Sheild #20371 within the "Felony  Complaint Report"
to ADA Brendon Riddle, dated 4/9/19, 5:05 P.M., on page 2 of 2, last
paragraph that "that when he [Officer Marcinek] arrived at the above de-
scribed location he observed defendant in the bathroom and the shower
curtain, rug, and t owels were  on fire. I observed damage to the wall
inside the bathroom, the toilet, and the floor.

       Please also note the bottom line disclaimer of this page in question:
"False Statements made in this written instrument are punishable as a mis-
demeanor  pursuant to section 210.45 of the Penal Law, and as other crimes."

Respectively,  the Police's body-camera and other eye-witnesses of this bathroom's condition upon Mr. Nieves's removal, clearly and convincingly substantiates officer Marcinek's "False Statement," via evidence of the shower curtain and rug not being oo fire, and the toilet was not damaged.  Otherwise, the fire department would have had to extingusih a massive fire that would have spread throughout the apartment and building, if these items were on fire, which apparently did not occure.

Also, please note the felony complaint's date: 4-9-19 at 5:05 PM, signifying the rash and disorganized criminal report's nature.

Third Count:

The defendant, in the County of New York, on or about March 6, 2019 had been found by the New York City Police responding to the 911 call to have lacked (not possessed the "capacity," "intent," nor "mental culpability" to have "knowingly entered and remained unlawfully in the building located at 561 West 561 Street with the intent to commit a crime therein and said building was a dwelling," which is supported by the Second Count's refuting facts aforementioned, above.

Fourth Count:

The defendant, in the  County of New York, on or about March 6, 2019 had been found by the New YOrk City Police responding to the 911 call to have lacked (not possessed) the "capacity," "intent" nor "mental culpability" to have "under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct which created a grave risk of death to another person, which is supported by the previous facts aforementioned, above under Count Two and Count One, concerning Mr. Nieves's hospitalization instead of being arrested.

Furthermore, pursuant to Article 15 Culpability §15.15, Practice Insights: Handling Charges Alleging Depraved Indifference to human life, by John M. Castellano, ESQ., Member of New York Bar. INSIGHT: "Perhaps no issue in New York criminal law has been more debated of late then the meaning of 'depraved indifference' to human life. After years of controversy, the New York Court of Appeals has substantially altered this

statutory element, requiring close attention on the part of all criminal practitioners handling these types of cases. While previously depraved indifference could be established by showing that a defendant's conduct objectively presented a very high degree of risk of death, now prosecutors must prove that the defendant possessed a subjective state of mind evidencing "wickness," "wantonness," or a "mischievous disregard" for the consequences of his acts. This new mental state - requires additional proof that prosecutors may have difficulty adducing in a particular case.

In addition, the Court of Appeals has made clear that depraved in-
difference murder is not a substitute for, or lesser included offense
of, intentional murder. Practitioners must respond to these changes.
Prosecutors should refrain from charging depraved indifference crimes
where the conduct appears intentional and should instead reverse depraved
crimes for the most unusual case. Defense counsel should be alert any
time depraved idifference is charged, assessing whether their client's
depraved counts was truely "wicked" or simply dangerous or misguided.
Counsel should move to dismiss depraved counts where the prosecution
theory is arguably unsupported and, failing that, must ensure that the
court properly charges the jury on the new requirement so that the de-
fendant may benefit from the additional requirement of proof.


ANALYSIS: Paragraph 6, line-8. Thus, where the defendant creates an
explosion in a residential building knowing full well that many people
could be killed, counsel can argue that the defendant only wanted to
commit suicide and had no desire to harm anyone else. Similarly, where
a defendant acts in a highly reckless manner by drinking heavily and
then driving the wrong way on a parkway, counsel can argue that the
defendant was too intoxicated to form the willful intent required for
depraved murder. cf. People v. Valencia 14 N.Y. 3d 927, 906 N.Y.S. 2d
515, 923 N.E. 2d 871 (2010).


Furthermore, based on the Felony Complaint Report to ADA Brandon
Riddle, signed by Fire Marchel Philip Meagher, page 2 of 2, line-2,
states "I am further informed by informant 1 that informant 1 successfully
moved the dresser away from the door defendant fled the bedroom and en-
tered the bathroom." This quoted statement is also an obvious "False
Statement" whereby the Police's body-camera recordings of their invest-
igation of the incident on March 6, 2019 should confirm that this struggle
over a dressor never occurred, which would have been a focal point of the
police's initial report. Also, how could have a woman overpowered the
physical strength of the defendant without sustaining any injuries, while
the police's body-camera recordings should substantiate the brief, intense
struggle of the defendant against the police's body-shield's entrance
into the bathroom's door upon it's slightly being opened by police. Police
officers whom released the defendant to Harlem Hospital emergency room,
nearly exactly before their exiting the hospital should prove one of them

stating a misperception of the defendant's attempt to stab the officer whhom possessed the body-shield witha crack pipe to fight off their entranc into the bathroom, which was explained by the defendant's protest for them to review the body-camera recordings closely which proves defendant's mis- understood actions of the defendant's mere attempt to vigorously push away their body-shield while holding a broken crack pipe. Thus, this informant 1 must be deceiving the People of the State of New York after having been influenced to do so by the fire marshels and/or police.

Fifth Count:

The defendant, in the County of New York, on or about March 6, 2019 had been found by the New YOrk City Police responding to the 911 call to have lacked (not possessed) the "capacity," "intent," nor "mental culpabilit to have restrained another person under circumstances which exposed that person to a risk of serious physical injury, in that primarily, "serious physical injury" means an imminent and present deadly potential exposure to the informant, wherein the Felony  Complaint Report clearly states that "informant 1 observed defendant lighting a lighter in a way that caused the informant to fear for her safety." This statement conclusively confirms the defendant's prior Count Four details, above, to have been a "false statement" with respect to the question into informant 1 alleging to have successfully struggled with the defendant to move a dresser, in light of his possession of a flicking lighter as an alleged dangerous instrument that caused her to fear for her life. Logically, her statements therein clearly contradicts themselve and must be fabrications influenced by this officers in order to falsify the Felony Complaint Report.

Conclusion:

Based on the above facts and arguments and based on the attached printout of "Psychiatric examinations and Custody/LawFActs" it is clearly stated in fact #: 3 beneath "Can the Police take a person to a hospital for a psychiatric examination" if the officer believes that: The person's mental disorder is likely to cause them to harm themselves or another person. Sometimes an officer will take the person to the hospital [instead] of charging them with a criminal offence (if they have grounds to do so). This clearly means that the police are not suppose to arrest and charge the

person for a criminal offence under these cirumstances. Please also see relative statutory and case laws below to further support the Indictments dismissal:

 An individual is guilty of burglary in the first degree if he enters a dwelling at night with the requisite mental state and, while inside the dwelling, "causes physical injury to any person who is not a participant in the crime." People v Perrin, 56 A.D.2d 957, 392 N.Y.S.2d 723, 1977 N.Y. A.D. LEXIS 11368 (N.Y. A.D. 3d Dep't 1977).

 Convictions of burglary in the first degree, N.Y. Penal Law § 140.30(3) and menacing in the second degree, N.Y. Penal Law § 120.14(1) were reversed because evidence that defendant displayed a taser or stun gun was insufficient to establish the "dangerous instrument" element of those crimes. People v Morillo, 104 A.D.3d 792, 960 N.Y.S.2d 224, 2013 N.Y. A.D. LEXIS 1523 (N.Y. A.D. 2d Dep't 2013), app. denied, 22 N.Y.3d 1201, 986 N.Y.S.2d 421, 9 N.E.3d 916, 2014 N.Y. LEXIS 1205 (N.Y. 2014).

 Court's instruction with respect to first degree burglary charge was deficient since it failed to properly communicate that defendant's liability for burglary was dependent on whether or not he possessed intent to commit crime at time he entered apartment. People v Montalvo, 183 A.D.2d 528, 584 N.Y.S.2d 300, 1992 N.Y. A.D. LEXIS 7285 (N.Y. A.D. 1st Dep't 1992).

 Evidence that victim suffered "physical injury" supported defendant's conviction of first degree burglary where victim suffered bruises on his hands lasting more than one month, lasting pain in his jaw which caused difficulty with eating, and other cuts and bruises. People v Lancia, 150 A.D.2d 799, 542 N.Y.S.2d 228, 1989 N.Y. A.D. LEXIS 7275 (N.Y. A.D. 2d Dep't 1989), app. denied, 75 N.Y.2d 869, 553 N.Y.S.2d 301, 552 N.E.2d 880, 1990 N.Y. LEXIS 835 (N.Y. 1990).

 Evidence satisfied "physical injury" element of first degree burglary where (1) defendant lunged at victim with screwdriver after victim confronted him during course of burglary of victim's house, (2) victim's fingers were "gouged" or cut, and were bleeding, and (3) victim testified that pain from injuries lasted for more than one week. People v Rosa, 155 A.D.2d 698, 548 N.Y.S.2d 264, 1989 N.Y. A.D. LEXIS 15158 (N.Y. A.D. 2d Dep't 1989).

"Physical injury" element of first degree burglary was established where tenant of burglarized apartment testified that he was in "great pain" for several weeks after being wrestled to ground by defendant and scraping skin off his knee, and tenant's wife testified that she sustained bloody mouth and

 loosened tooth as result of being punched by defendant. People v McMahon, 157 A.D.2d 548, 549 N.Y.S.2d 733, 1990 N.Y. A.D. LEXIS 379 (N.Y. A.D. 1st Dep't), app. denied, 75 N.Y.2d 921, 555 N.Y.S.2d 40, 554 N.E.2d 77, 1990 N.Y. LEXIS 1616 (N.Y. 1990).



Where defendant with a history of hospitalizations and arrests for violent acts set fire to an occupied building while he was drinking and suffering heroin withdrawal, he was found not responsible for arson and reckless endangerment by reason of mental disease or defect. The trial court did not err by including an effective-evaluation provision in the amended order of conditions for his release from a secure mental health facility, because he posed a public safety risk. Matter of Allen B. v Sproat, 23 N.Y.3d 364, 991 N.Y.S.2d 386, 14 N.E.3d 970, 2014 N.Y. LEXIS 1095 (N.Y. 2014).

## 8. — ––Insufficient



Where indictment charged arson in the second degree but facts contained in indictment were sufficient only to sustain charge of arson in third degree and defendant pled guilty to facts amounting to arson in third degree, sentence for arson in the second degree was improper and would be remanded for resentencing for crime of arson in third degree. People v Hutchins, 43 A.D.2d 412, 352 N.Y.S.2d 520, 1974 N.Y. A.D. LEXIS 5665 (N.Y. A.D. 3d Dep't 1974).



Evidence supported convictions of second degree arson and first degree reckless endangerment where (1) fire was set with combustible materials or liquid in at least 3 locations inside building, and gas leak was deliberately started inside building, resulting in explosion, and (2) only means of ingress or egress was front door, one defendant was seen working on heater inside building prior to explosion, both defendants left building together 15 minutes before explosion, defendants locked security gates behind them, no one else was seen entering or leaving building thereafter, and expert testified that it would have taken 20 minutes or less for enough gas to accumulate to result in explosion. People v Mann, 125 A.D.2d 711, 510 N.Y.S.2d 196, 1986 N.Y. A.D. LEXIS 62963 (N.Y. A.D. 2d Dep't 1986).

Evidence supported conviction of first degree reckless endangerment, even though no one suffered actual harm, where defendant set 5 separate fires in apartment building which he knew to be inhabited, after threatening neighbors that he was going to do so. People v Anderson, 216 A.D.2d 257, 629 N.Y.S.2d 223, 1995 N.Y. A.D. LEXIS 7127 (N.Y. A.D. 1st Dep't), app. denied, 86 N.Y.2d 840, 634 N.Y.S.2d 449, 658 N.E.2d 227, 1995 N.Y. LEXIS 4522 (N.Y. 1995).



A person who starts a fire under circumstances evidencing a depraved indifference to human life and recklessly causes the death of another person may properly be charged with both arson and homicide. If the other person is not killed but is seriously injured, the perpetrator may then be properly charged with both arson and assault. If the other person is neither killed nor seriously injured, but is recklessly exposed to a grave risk of death, then the perpetrator may be properly charged with both arson and reckless endangerment. People v Rodriguez, 110 Misc. 2d 828, 442 N.Y.S.2d 948, 1981 N.Y. Misc. LEXIS 3170 (N.Y. Sup. Ct. 1981).



Unlawful imprisonment in second degree is lesser included offense of unlawful imprisonment in first degree; in order to be found guilty of unlawful imprisonment in first degree, it is only necessary that one restrained be exposed to risk of serious physical injury; where injury is inflicted prior to restraint, there is reasonable view of evidence which would entitle jury to find that while defendant committed lesser crime he did not commit greater. People v Subik, 112 A.D.2d 480, 490 N.Y.S.2d 894, 1985 N.Y. A.D. LEXIS 55835 (N.Y. A.D. 3d Dep't 1985).



Although the restraint element of the crime of unlawful imprisonment in the first degree under N.Y. Penal Law § 135.10 was shown, there was no evidence that defendant's conduct exposed the victim to a risk of serious physical injury when her hands were tied and, thus, the conviction under count 6 was reduced to unlawful imprisonment in the second degree. People v Daniels, 97 A.D.3d 845, 948 N.Y.S.2d 431, 2012 N.Y. A.D. LEXIS 5247 (N.Y. A.D. 3d Dep't), app. denied, 20 N.Y.3d 931, 957 N.Y.S.2d 691, 981 N.E.2d 288, 2012 N.Y. LEXIS 3948 (N.Y. 2012).





New York's unlawful imprisonment statute, is divisible into two crimes: the unlawful imprisonment of a competent adult, which cannot be accomplished without use or threat of force under N.Y. Penal Law §§ 135.10, 135.00(1)(a), and the unlawful imprisonment of an incompetent person or child under 16, which can be accomplished without force under N.Y. Penal Law §§ 135.10, 135.00(1)(b); therefore the unlawful imprisonment of competent adult is always a crime of violence pursuant to 18 U.S.C.S. § 16, but that the unlawful imprisonment of an incompetent person or child under 16 is not a crime of violence pursuant to § 16. Dickson v Ashcroft, 346 F.3d 44, 2003 U.S. App. LEXIS 18565 (2d Cir. 2003).



Depraved indifference has the same meaning in N.Y. Penal Law § 120.25, pertaining to first degree reckless endangerment, and in N.Y. Penal Law § 125.25(2), pertaining to depraved indifference murder; in both offenses, depraved indifference is a culpable mental state, which is not an objective assessment of the risk involved in particular conduct, but instead, an utter disregard for the value of human life and a willingness to act not because one intends harm but because one does not care whether or not harm results. People v Feingold, 7 N.Y.3d 288, 819 N.Y.S.2d 691, 852 N.E.2d 1163, 2006 N.Y. LEXIS 1830 (N.Y. 2006).



Defendant was improperly convicted of first degree reckless endangerment under N.Y. Penal Law § 120.25 for causing an explosion when he attempted suicide by turning on the gas in his apartment because depraved indifference to human life was a culpable mental state; although a factfinder could reasonably have inferred the requisite mental state from defendant's actions, he could not be found to be depravedly indifferent when the trial court explicitly found that he did not act out of a depraved indifference to the value of the lives of others, and his conviction was therefore reduced to second degree reckless endangerment under N.Y. Penal Law § 120.20. People v Feingold, 7 N.Y.3d 288, 819 N.Y.S.2d 691, 852 N.E.2d 1163, 2006 N.Y. LEXIS 1830 (N.Y. 2006).



Defendant's voluntary act of imbibing alcoholic beverage, knowing that he was prone to criminal acts while drunk and that consumption of even one drink would destroy his ability to resist further drinking, to point of intoxication, constituted recklessness per se; thus, although defendant was not guilty of second degree arson for setting fire to his apartment while intoxicated since he lacked specific intent to damage building, he was guilty of lesser included offense of fourth degree arson, defined as "recklessly damag[ing] building...by intentionally starting fire," and also first degree reckless endangerment. People v Tocco, 138 Misc. 2d 510, 525 N.Y.S.2d 137, 1988 N.Y. Misc. LEXIS 50 (N.Y. Sup. Ct. 1988).



Defendant's conviction of first-degree reckless endangerment was reduced to second-degree reckless endangerment under N.Y. Penal Law § 120.20 because the evidence was insufficient to establish that defendant acted with depraved indifference to human life under N.Y. Penal Law § 120.25 where defendant's flight from law enforcement officers in a motor vehicle was not wantonly cruel or brutal behavior evincing an utter disregard for human life. People v Lostumbo, 107 A.D.3d 1395, 967 N.Y.S.2d 293, 2013 N.Y. A.D. LEXIS 4050 (N.Y. A.D. 4th Dep't 2013).



### 4. Weight of evidence



Verdict convicting defendant of first degree unlawful imprisonment was not against the weight of the evidence because the victim testified that she walked toward the apartment door to leave, but defendant pulled a revolver from his pocket, pointed it at her and told her to sit down and that he was not joking; she further testified that, at different points during the night, defendant struck her and ordered her to go upstairs, go back downstairs and to perform certain sexual acts, and she complied because he had a gun; the jury could infer that the victim was at risk of serious physical injury; and it was plausible that defendant used force or intimidation on that occasion based on his previous acts of domestic violence against her. People v Rosario, 157 A.D.3d 988, 69 N.Y.S.3d 149, 2018 N.Y. A.D. LEXIS 60 (N.Y. A.D. 3d Dep't), app. denied, 31 N.Y.3d 1121, 2018 N.Y. LEXIS 2159 (N.Y. 2018).

<u>LEGAL ARGUMENT</u>

Pursuant to New York Civil Law, Article 3, Subsection 23 - Privilege
from arrest: No person shell be arrested in civil proceedings without a
statutory provision. A person shall not be arrested in a civil action or
special proceeding, except as prescribed by statute. The writ of ne
exeat is abolished. Mr. Nieves had been released from police custody at
Harlem Hospital pursuant to Mental Hygiene Law 9.27 & 9.39 and was not
a prisoner. See Exhibit (A). Records reflect that patient has displayed
no aggressive behavior, but periodically paces the unit. See Exhibit (B).
Patient was released for treatment under the chief complaint by BIBEMS
and NYPD of trying to set himself on fire. See Exhibit (C), and Exhibit
(D). As of March 28, 2019, patient's disposition was to be discharged to
shelter when psychiatrically stable.                      Per records
patient's medication was changed and an ACT Coordinator had been prescrib-
ed: Steffany Shelton @ 347-886-6672, as well as an Assisted Outpatient
Treatment court order enforced for substance use treatment and medication
compliance.

EXHIBIT (A)